## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAVANNA SPENCER, | ) | |
| Plaintiff | ) | **C.A. No. 09-124 Erie** |
| | ) | |
| v | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| LANCE COURTIER, et al., | ) | |
| Defendants | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.      RECOMMENDATION**

It is respectfully recommended that:

> 1.      the DOC Defendants' motion to dismiss [Document # 5] be granted in part and denied in part;

> 2.      Defendant Polmueller's motion to dismiss or in the alternative for summary judgment [Document # 27] be granted in part and denied in part.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants pursuant to the Americans with Disabilities Act and the Rehabilitation Act be dismissed.

**II.      REPORT**

**A**.      **Relevant Procedural History**

On June 10, 2009, Plaintiff Ravanna Spencer, an inmate incarcerated at the State Correctional Institution at Retreat in Hunlock Creek, Pennsylvania ("SCI-Retreat"), filed this civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants are:  Lance Courtier ("Courtier"), former Chief Psychologist at the Pennsylvania Department of Corrections ("DOC"); Jeffery Beard, Secretary of the DOC ("Beard"); Donald Kelchner, former Superintendent at SCI-Camp Hill ("Kelchner"); David Patton, former Deputy Superintendent at SCI-Camp Hill

("Patton"); Teresa Law, Medical Grievance Coordinator at SCI-Camp Hill ("Law"); Richard

Southers, Unit Manger at SCI-Camp Hill ("Southers"); Edward Kalsky, SMU Psychologist at

SCI-Camp Hill ("Kalsky"); Marilyn S. Brooks, former Superintendent at SCI-Albion ("Brooks");

Joyce Wilkes, staff member at SCI-Albion ("Wilkes"); Ronald Bryant, former Assistant

Superintendent at SCI-Albion ("Bryant"); Major Giddens, corrections officer at SCI-Albion

("Giddens"); Major Aubel, corrections officer at SCI-Albion ("Aubel"); Patty McKissock, Unit

Manager at SCI-Albion ("McKissock"); Fred Maue, former Chief Psychologist at the DOC

("Maue"); William Stickman, Deputy Secretary at the DOC ("Stickman"); John Shaffer, former

Executive Deputy Secretary at the DOC ("Shaffer"); Eugene Polmueller, M.D. (inaccurately

identified as Eugene "Pullmuller" in the Complaint), Chief Psychologist at SCI Camp Hill

("Polmueller"); Kurt Suesser, corrections officer at SCI-Albion ("Suesser"); and Scott Whaling,

SMU Counselor at SCI-Camp Hill ("Whaling").  All Defendants other than Defendant

Polmueller are hereafter collectively referred to as "DOC Defendants".

        Plaintiff alleges that Defendants violated his rights under the eighth and fourteenth

amendments to the United States Constitution.  In particular, Plaintiff claims that the conditions

of his confinement in the Special Management Unit ("SMU") at SCI-Camp Hill from January 11,

2006 to June 8, 2007, violated his Eighth Amendment right to be free from cruel and unusual

punishment and his Fourteenth Amendment right to due process.  In addition, Plaintiff claims

that Defendants were deliberately indifferent to his serious mental health needs by failing to

provide adequate treatment, and by failing to remove him from the SMU despite their knowledge

that his mental health problems were exacerbated by the conditions to which he was exposed.

Plaintiff also makes several allegations regarding the conditions of his confinement at SCI-

2

Albion prior to January 11, 2006.  Finally, Plaintiff claims that Defendants actions violated his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and Pennsylvania's Mental Health Procedures Act.  As relief for his claims, Plaintiff seeks compensatory and punitive damages.

The DOC Defendants have filed a motion to dismiss Plaintiff's complaint, arguing that his claims are barred by the applicable statute of limitations and, alternatively, that he has failed to state an Eighth Amendment conditions of confinement claim upon which relief may be granted. [Document # 5].  In addition, Defendant Polmueller has filed a motion to dismiss or in the alternative for summary judgment, arguing that Plaintiff's claims are barred by the applicable statute of limitations and, alternatively, are barred by the doctrines of *res judicata* and/or collateral estoppel because the same claims were previously litigated by Plaintiff in a lawsuit he filed in the United States District Court for the Middle District of Pennsylvania. [Document # 27].  Plaintiff has since filed a brief in response to each of these motions. [Document ## 30, 31]. This matter is now ripe for consideration.


**B.     Relevant Factual History**

Plaintiff was incarcerated at SCI-Albion from July 15, 2003 to January 11, 2006. (See Declaration of Ian Taggart ("Taggart Declaration") attached as Exhibit C to Document # 28, Defendant Polmueller's Brief, at ¶¶ 10-11).  While at SCI-Albion, Plaintiff alleges that, on September 29, 2005, Defendants Brooks, Suesser, Wilkes, McKissock, Bryant, Giddens, and Aubel agreed to submit a petition to have Plaintiff placed in the SMU; however, this petition was denied by the Program Review Committee ("PRC") on November 10, 2005, due to Plaintiff's

mental illness. (Complaint at ¶¶ 5-6).  On November 18, 2005, Plaintiff attempted suicide and was placed in a "POC" cell until December 9, 2005. (Id. at ¶ 8).  On December 15, 2005, Defendants Wilkes and Bryant allegedly told Plaintiff that he was being considered for placement in a mental health unit for people with behavioral problems (referred to as "SNU"), but Plaintiff later learned that he was recommended for SMU placement. (Id. at ¶¶ 9-10).

On January 11, 2006, Plaintiff was transferred to SCI-Camp Hill, where he was immediately placed in the SMU. (See Taggart Declaration at ¶¶ 11-12).  Plaintiff remained in SCI-Camp Hill's SMU until he was transferred to SCI-Fayette on June 8, 2007. (Id. at ¶ 14). While in the SMU, Plaintiff alleges that he was subjected to the following conditions:

    1.    24-hour lighting and dust blowing from vents, which allegedly caused him to suffer sleep deprivation, headaches, and worsening of his mental illness (Complaint at ¶ 19);

    2.    He was allowed only five hours of exercise a week "in a small cage," with no exercise equipment, before which he was strip-searched, and after which other inmates often threw urine and feces at him, or spat on him (Id. at ¶ 20);

    3.    Deodorant, lotion, hair grease, conditioner, and mouthwash were not allowed, reading materials were banned, and he was prohibited from taking correspondence courses and participating in rehabilitation or educational programs, which caused him to be ineligible for parole. (Id. at ¶¶ 21-23);

    4.    The law library was inadequate because it did not contain required books and legal materials (Id. at ¶ 24);

    5.    Toilets often backed up and overflowed, cleaning supplies were refused, and he was forced to clean his cell with the same rag and soap with which he washed his body (Id. at ¶ 26);

    6.    He was exposed to unsanitary food conditions and environmental tobacco smoke (Id. at ¶¶ 27-28);

4

7.      He was unnecessarily strip-searched before and after non-contact visits, during which he remained in chains and handcuffs (Id. at ¶ 29);

8.      Guards constantly yelled and banged on cell doors, and allegedly caused inmates to bang food trays and throw feces, urine or spit on undesirable inmates to keep them awake. (Id. at ¶ 30); and

9.      Fire safety measures were inadequate (Id. at ¶¶ 32-33).

Plaintiff claims that, due to the "harsh stringencies of the SMU," he attempted to commit suicide on April 6, 7, and 16, 2006, and also made a further attempt at suicide in or around October 2006. (Id. at ¶¶ 40-42, 48).  Plaintiff alleges further that he was only seen by a psychiatrist or psychologist when he was on medication, and the meetings "were never longer than 5 minutes" and were not confidential. (Id. at ¶¶ 37-39).

On May 22, 2006, Defendants Kelchner and Beard made a personal visit to the SMU, at which time Plaintiff told them about his mental health problems and the harsh conditions that exacerbated his health. (Id. at ¶ 44).  According to Plaintiff, Defendant Beard said "he would look into it but never did." (Id.).

Plaintiff alleges that he was taken off his psychotropic medications "for no valid reason" on April 4, 2006.  He was then placed back on medication in July or August 2006, only to be taken off again in October 2006.  This caused Plaintiff to attempt suicide again. (Id. at ¶ 48).  In January 2007, Plaintiff began a hunger strike that lasted until March 2007, during which time Defendants Maue and Polmueller allegedly denied Plaintiff a psychiatric evaluation and medication, and refused to have him removed from SMU. (Id. at ¶ 49).

**C.      Standards of Review**

5

1.    **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead

simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.  This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  **First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.**  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.  This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, ___ F.3d. ___, ___, 2009 WL 2501662, at * 4-5 (3d Cir. Aug. 18, 2009).

### 2.      Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of

law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of

showing the basis for its motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The

burden then shifts to the non-movant to come forward with specific facts showing a genuine

issue for trial. <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Williams v.

Borough of West Chester, Pa.</u>, 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present

affirmative evidence-more than a scintilla but less than a preponderance-to support his claims).

When deciding a motion for summary judgment, a court must draw all reasonable inferences in

the light most favorable to the non-movant. <u>Bailey v. United Airlines</u>, 279 F.3d 194, 198 (3d

Cir. 2002) <u>quoting</u> <u>Battaglia v. McKendry</u>, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a

party opposing summary judgment must do more than rest upon mere allegations, general

denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings

and designate specific facts by use of affidavits, depositions, admissions, or answers to

interrogatories showing there is a genuine issue for trial." <u>In re Ikon Office Solutions</u>, 277 F.3d

658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or

weight of the evidence, rather, it may only determine the existence of a triable issue of fact. <u>Big

Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine

issue is one in which the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers" <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521(1972).  If

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,

it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v.</u>

<u>MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552,

555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read

"with a measure of tolerance"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir.

1991).  Under our liberal pleading rules, a district court should construe all allegations in a

complaint in favor of the complainant.  <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997).  <u>See, e.g.</u>,

<u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

<u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because

Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is

appropriate.


    **D.**       **Discussion**

           **1.**      **Statute of Limitations**

      The federal civil rights laws do not contain a specific statute of limitations for § 1983

actions.  However, it is well established that the federal courts must look to the relevant state

statute of limitations for personal injury claims to determine the applicable limitations period.

<u>Sameric Corp. Del., Inc. v. City of Philadelphia</u>, 142 F.3d 582 (3d Cir. 1998)(internal citations

omitted).  In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two

year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a

§ 1983 claim must be filed no later than two years from the date the cause of action accrued.  See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996).  Furthermore, a claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based."  Sameric, 142 F.3d at 599.

Here, Plaintiff's original Complaint was filed on June 1, 2009; however, it was apparently signed by Plaintiff on May 24, 2009.  Thus, for purposes of applying the statute of limitations, this Court will treat May 24, 2009, as the relevant filing date pursuant to the prison mailbox rule. See Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa.Super. 2001), citing Commonwealth v. Little, 716 A.2d 1287 (Pa.Super. 1998)(in determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]").  Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to May 24, 2007, is barred by the statute of limitations.

Based on the foregoing, the following claims should be dismissed as untimely:

1.   All claims against SCI-Albion Defendants, as Plaintiff was transferred from SCI-Albion to SCI-Camp Hill on January 11, 2006, more than a year beyond the reach of the limitations period. As a result, Defendants Brooks, Wilkes, Bryant, Giddens, Aubel, McKissock, and Suesser should be dismissed from this case;

2.   Any claim related to or arising from the discontinuation of Plaintiff's psychotropic medications in April and October 2006; and

3.   Any claim against Defendants Maue and Polmueller related to or arising from their alleged failure to provide a psychiatric evaluation and medication during Plaintiff's hunger strike from

10

January 2007 to March 2007.

The DOC Defendants also argue that Plaintiff's Eighth Amendment claim regarding the conditions of confinement in the SMU should be confined to events that occurred during the closed period from May 24, 2007, to June 8, 2007, and that the portion of such claim arising from events that occurred prior to May 24, 2007 should be dismissed as time-barred.[1]  In response, Plaintiff contends that his conditions of confinement claim is of a continuing nature and encompasses the entire period he was in the SMU.  Accordingly, since the last day of his SMU confinement fell within the limitations period, Plaintiff asserts that his claim is timely.  The Court agrees.

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Brenner v. Local 514, United Broth. of Carpenters and Joiners of America, 927 F.2d 1283, 1295 (3d Cir. 1991).  Here, the conditions of which Plaintiff complains are generally alleged to have taken place throughout his period of confinement in the SMU.  Thus, the Court finds that Plaintiff's Eighth Amendment conditions of confinement claim is timely and should be addressed on its merits.

Similarly, Defendant Polmueller contends that Plaintiff's Eighth Amendment deliberate indifference claims arising from his confinement in the SMU should be dismissed as untimely,

---

[1]

The Court notes that the DOC Defendants have failed to recognize and respond to Plaintiff's separate Eighth Amendment claim that they were deliberately indifferent to his mental health condition by failing to provide adequate treatment, and by failing to have him removed from the SMU despite their alleged knowledge that the conditions exacerbated his mental health problems.  Thus, such claim should be allowed to proceed against the DOC Defendants beyond the pleading stage.

while Plaintiff counters that such claims also arise from a continuing violation.  Once again, the

Court agrees with Plaintiff.  The clear import of Plaintiff's primary deliberate indifference claim

is that the DOC Defendants and Defendant Polmueller knew or should have known that his

continued confinement in the SMU exacerbated his mental health condition, yet they failed to

take any action to have Plaintiff removed from the unit.  Such a claim naturally applies to the

duration of Plaintiff's stay in the SMU and, thus, is of an ongoing nature.  In addition, Plaintiff

claims that Defendant Polmueller was deliberately indifferent to his mental health needs during

his period of confinement in the SMU, because he saw him only when he was on medication or

after he attempted suicide, and the assessments were not kept confidential and only lasted "about

five minutes."  This claim, too, is of an ongoing nature.  Accordingly, the Court finds that the

claims against Defendant Polmueller are timely under the continuing violation doctrine and

should be addressed on their merits.[2]

### 2.    Merits

#### a.    Eighth Amendment Conditions of Confinement Claim

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must

show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted

the injury with deliberate indifference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)  An

objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized

---

[2]

The Court notes that neither the DOC Defendants nor Defendant Polmueller moved to dismiss Plaintiff's Fourteenth
Amendment due process claim, apart from their general challenges based on the statute of limitations and the
doctrines of *res judicata* and collateral estoppel.  As a result, the Court will not address such claim on its merits, and
the same should be allowed to proceed beyond the pleading stage.

measure of life's necessities," such as food, clothing, shelter, and medical care.  Rhodes v.

Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility,

221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding

that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing,

shelter, sanitation, medical care, and personal safety").  Furthermore, to establish deliberate

indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or

safety; 2) the official must be aware of facts from which an inference could be drawn that a

substantial risk of serious harm exists, and 3) the official must also draw the inference.  Farmer,

511 U.S. at 837.

Here, Plaintiff alleges that the DOC Defendants violated his Eighth Amendment right to

be free from cruel and unusual punishment by subjecting him to undesirable, unsafe and/or

unsanitary conditions in the SMU.  The DOC Defendants respond that the alleged SMU

conditions did not deprive Plaintiff of the minimal civilized measure of life's necessities and,

thus, did not violate Plaintiff's Eighth Amendment rights.  In making this argument, Defendants

cite, *inter alia*, the Pennsylvania Superior Court's decision in Rivera v. Pennsylvania Department

of Corrections, 827 A.2d 525 (Pa.Super. 2003), in which the court rejected an Eighth

Amendment challenge to conditions of confinement in a long term segregation unit ("LTSU"),

which were substantially similar to those described by Plaintiff in this case.  In particular, the

Rivera court observed and upheld the following conditions that existed in the LTSU:

> The LTSU ... is potentially a stay of indefinite duration for the
> inmate.
>
> The basic conditions in this most restrictive of units designed for the
> most severe behavioral problems are, perhaps not surprisingly, very

13

unpleasant.

The inmates are not allowed most types of personal property, newspapers, leisure books, radio, television, visits, or participation in educational or religious programs.  They are confined in a solitary cell for twenty-four hours a day.  Three showers a week are allowed and one hour of exercise a day, five days a week.  There are limited library privileges and it is not open on the weekends.

There is a regular problem of feces throwing and the accompanying stench, which has been recently only partially corrected by a modification of the cell doors.  Another practice of stopping up toilets until they run over and flood the cells, is not uncommon and can lead to similar unsanitary conditions.  Although the institution has a specialized team to go in and clean and sanitize after such incidents, the evidence suggests that there are sometimes periods of delay during which the inmates are residing and even eating their meals within the sight and smell of human waste...

....  There is considerable noise described as banging and screaming in the unit at all hours of the day and night and the lights are left on twenty-four hours a day.  Many of the inmates are described as suffering from mental or emotional illnesses, although the severely mentally ill are apparently housed in a separate unit.

There have been problems with the heat during which the cells have been quite cold during the winter months, although extra blankets appear to have been available at those times....  At times, pepper spray is used to control unruly inmates, and the spray lingers in the air, causing problems for the surrounding inmates.

This Court would expect the conditions on such a unit to be even less pleasant than the rest of the prison, and that few privileges, comforts or amenities will be available, as the LTSU is disciplinary custody and is intended to be punitive.

Rivera, 837 A.2d at 529-32.  The Superior Court's findings in this regard were recently cited

with approval by the Honorable Lisa Pupo Lenihan in Brown v. Beard, 2:07-cv-637, slip op. at

* 17 (W.D.Pa. Mar. 9, 2009)(noting that institutions housing "persons convicted of serious

crimes cannot be free of discomfort")(citations omitted).

14

Defendants argue that Plaintiff is complaining about conditions virtually identical to those found to be consistent with the Eighth Amendment in <u>Brown</u> and <u>Rivera,</u> and, thus, Plaintiff's Eighth Amendment conditions of confinement claim should be dismissed.  At first blush, this argument would appear to be dispositive; however, unlike the inmate plaintiffs in <u>Brown</u> and <u>Rivera</u>, Plaintiff has alleged that he suffers from various mental illnesses that placed him at greater risk of suffering injury than other inmates in the SMU.  In particular, Plaintiff claims that he suffers from depression, NOS, borderline personality disorder, anti-social personality disorder, and episode adjustment disorder, and is being treated for schizophrenic disorder. (Complaint at ¶ 17).  Plaintiff alleges further that he attempted suicide on at least five occasions as a result of the harsh conditions in the SMU, which he claims exacerbated his mental health problems. (Complaint at ¶¶ 39-42, 48).

Several courts have upheld similar Eighth Amendment claims by mentally ill inmates challenging the harsh conditions to which they were exposed in restrictive segregation units.  For instance, in <u>Madrid v. Gomez</u>, 889 F.Supp. 1146 (N.D.Cal. 1995), inmates challenged conditions of confinement in the Pelican Bay State Prison's Security Housing Unit ("SHU").  In the SHU, inmates were isolated in windowless cells for 22 ½ hours a day, were not allowed to participate in prison job opportunities or any other prison recreational or educational programs, and were denied access to group exercise and exercise equipment.  SHU inmates were allowed access to radios, televisions, and reading materials, were permitted three showers a week, and were allowed non-contact visits.

Before assessing the particular conditions of confinement challenged in <u>Madrid</u>, the court observed that

> [t]he Eighth Amendment simply does not guarantee that inmates will not
> suffer some psychological effects from incarceration or segregation.
> However, if the particular conditions of segregation being challenged are
> such that they inflict a serious mental illness, greatly exacerbate mental
> illness, or deprive inmates of their sanity, then defendants have deprived
> inmates of a basic necessity of human existence-indeed, they have
> crossed into the realm of psychological torture.

Madrid, 889 F.Supp. at 1264 (citation omitted).

Then, after reviewing the plaintiffs' complaints regarding the conditions in the Pelican

Bay SHU, the Madrid court found that:

> Here, the record demonstrates that the conditions of extreme social
> isolation and reduced environmental stimulation found in the Pelican Bay
> SHU will likely inflict some degree of psychological trauma upon most
> inmates confined there for more than brief periods.  Clearly this impact is
> not to be trivialized; however, for many inmates, it does not appear that
> the degree of mental injury suffered significantly exceeds the kind of
> generalized psychological pain that courts have found compatible with
> Eighth Amendment standards.  While a risk of a more serious injury is
> not non-existent, we are not persuaded ... that the risk of developing an
> injury to mental health of sufficiently serious magnitude due to current
> conditions in the SHU is high enough for the SHU population as a whole,
> to find that current conditions in the SHU are *per se* violative of the
> Eighth Amendment with respect to all potential inmates.
>
> **We can not, however, say the same for certain categories of inmates:**
> **those who the record demonstrates are at a particularly high risk for**
> **suffering very serious or severe injury to their mental health,**
> **including overt paranoia, psychotic breaks with reality, or massive**
> **exacerbations of existing mental illness as a result of the conditions in**
> **the SHU.  Such inmates consist of the already mentally ill, as well as**
> **persons with borderline personality disorders,... or a history of prior**
> **psychiatric problems or chronic depression.  For these inmates,**
> **placing them in the SHU is the mental equivalent of putting an**
> **asthmatic in a place with little air to breathe.  The risk is high**
> **enough, and the consequences serious enough, that we have no**
> **hesitancy in finding that the risk is plainly 'unreasonable.'**

Madrid, 889 F.Supp. at 1265 (emphasis added), citing Helling v. McKinney, 509 U.S. 25, 34

(1993).  Accordingly, the <u>Madrid</u> court concluded that, "with respect to this limited population of the inmate class, plaintiffs have established that continued confinement in the SHU ... deprives inmates of a minimal civilized level of one of life's necessities."  <u>Id</u>. at 1266.

Similarly, in <u>Jones'El v. Berge</u>, 164 F.Supp.2d 1096 (W.D.Wis. 2001), multiple inmates, seven of whom suffered from various mental illnesses, brought an action challenging conditions of their confinement at a supermaxium security ("Supermax") facility.  In particular, the inmates challenged their confinement alone in their cells for all but four hours a week, the lack of exercise equipment in the exercise cell, the constant illumination of their cells, and the denial of programming.  Upon review of the inmates' complaints, the court in <u>Jones'El</u> noted concern regarding the effect the Supermax conditions might have on those with mental illnesses.  Specifically, the court observed that while "most inmates have a difficult time handling these conditions of extreme social isolation and sensory deprivation,... for seriously mentally ill inmates, the conditions can be devastating.  Lacking physical and social points of reference to ground them in reality, seriously mentally ill inmates run a high risk of breaking down and attempting suicide."  <u>Jones'El</u>, 164 F.Supp.2d at 1098.  Thus, the court concluded that the plaintiffs had shown "more than a negligible chance of success of demonstrating that the conditions of confinement at Supermax pose significant risks to seriously mentally ill inmates."  <u>Id</u>. at 1121.  <u>See</u> <u>also</u> <u>Ruiz v. Johnson</u>, 37 F.Supp.2d 855, 914 (S.D.Tex. 1999), <u>rev'd on other grounds</u>, 243 F.3d 941 (5th Cir. 2001), <u>adhered to on remand</u>, 154 F.Supp.2d 975 (S.D.Tex. 2001)(upholding mentally ill inmates' challenge to conditions of deprivation in administrative segregation unit, finding that "[t]he same standards that protect against physical torture prohibit mental torture as well - including the mental torture of excessive deprivation").

Here, the conditions alleged to have been present in the SMU at SCI-Camp Hill are remarkably similar, if not even more restrictive and harsh, than those described in <u>Madrid</u> and <u>Jones'El</u>.  Moreover, Plaintiff has clearly alleged that the harsh conditions exacerbated his mental health condition to such an extent that he attempted suicide on, at least, five occasions during his period of confinement in the SMU.  Thus, accepting Plaintiff's allegations as true for purposes of determining the DOC Defendants' motion to dismiss, this Court finds that Plaintiff has sufficiently alleged that the harsh conditions in the SMU deprived him of the minimal civilized measure of one of life's necessities - his mental health.  Accordingly, he has met the objective component of his Eighth Amendment claim, for pleading purposes.

In addition, Plaintiff has sufficiently alleged that the DOC Defendants were deliberately indifferent to the serious risk of harm his continued confinement in the SMU imposed upon his mental health.  In particular, Plaintiff has alleged as follows:

44. On 5-22-06 both Defendant Kelchner made a personal visit to SMU along with Defendant Beard.  I told both of them about my mental health problems.  I showed them documentation and explained to them the harsh conditions of SMU that were exacerbating my mental [health condition]. Defendant Beard said he would look into it but never did.

45. I was on Defendant Southers unit which he, Defendant Kalsky and Whaling was on Mon thru Fri and knew of these conditions and saw them because they were on the unit Monday through Friday.  In addition Defendants Souther, Whaling, Kalsky, Law, and Patton were all on the psychiatrist review team and knew of my mental problems and the restrictive supermax setting that exacerbated in the SMU and those Defendants were in a position to initiate my removal but instead did nothing.

*                      *                      *

52. Defendant[s] Law, Maue, Courtier, Kalsky, Pulmuller [sic],

18

> Whaling, Patton, Kelchner, Southers, and Beard are liable no[t] only because they knew that the SMU exacerbates mental illness and they intentionally deprived me of access to adequate mental health treatment..., plus they knew I was on at least 7 psychotropic medications prior [to] SMU placement....

> 53.    ....  Defendant[s] Stickman, Southers, Kelchner, Patton, Maue, Courtier, Whaling, Kalsky, and Shaffer all knew that placement of a seriously mentally ill prisoner would exacerbate that prisoner's mental health yet they still placed me in the SMU despite the fact [they] knew I suffer from a serious mental illness.

The foregoing allegations, together with the allegations regarding Plaintiff's numerous suicide attempts while confined in the SMU, provide enough information from which a fact finder may conclude that Defendants were deliberately indifferent to the substantial risk of serious harm Plaintiff's continued confinement in the SMU could cause to his mental health. As a result, the DOC Defendants' motion to dismiss Plaintiff's Eighth Amendment conditions of confinement claim should be denied.

### b.    Eighth Amendment Deliberate Indifference to Mental Health Claim Against Defendant Polmueller

Plaintiff claims that Defendant Polmueller was deliberately indifferent to his serious mental health needs when he failed to have Plaintiff removed from the SMU despite his alleged knowledge that the conditions in the SMU exacerbated Plaintiff's mental illness.  In addition, Plaintiff claims that Defendant Polmueller only saw him when he was on medication or after he attempted suicide, and that the meetings lasted only "about five minutes" and were not kept confidential.

In response, Defendant Polmueller asserts that Plaintiff's claims are barred by the

19

doctrines of *res judicata* and/or collateral estoppel because all issues related to the claims were previously litigated in a lawsuit Plaintiff filed in the United States District Court for the Middle District of Pennsylvania at Civil Action No. 06-1099 (herein referred to as the "Maxwell case," in reference to the first named defendant in that case."  In particular, Defendant Polmueller asserts that Plaintiff's allegations in this case "involve the same period of confinement, the same complaints about his placement in the SMU, and the same claims that his mental health history was revealed to other inmates and C.O.'s in the SMU." (Document # 28, Defendant Polmueller's Brief, at pp. 6-7).  While Defendant Polmueller acknowledges that he was not named as a Defendant in the Maxwell case, he contends that nearly identical claims were asserted by Plaintiff against, *inter alia*, Drs. Newton and Khan, who were also psychiatrists at SCI-Camp Hill.  Specifically, Defendant Polmueller notes that Plaintiff made the following allegation in the original complaint in the Maxwell case:

> [Drs. Newton and Khan, and Defendant Kalsky] gave me an open pod examination behind the door and began to put my mental health history out there for everyone to hear I asked them to stop but he kept on going which led to inmates and correctional officers to make fun of my mental health issues...."

(Document # 28, Exhibit A at p. 3).  Defendant Polmueller then compares the foregoing allegations with those made in the following paragraph of Plaintiff's complaint in the instant case:

> 39.   Out of all the assessments psychiatric and psychological none of these assessments were ever confidential and Defendant Kalsky was present for most of them and by my mental health history being exposed to other people it caused me psychological and emotional pain including the ones on March 22 and April 4 which caused me to attempt suicide.

(Complaint at ¶ 39).

Defendant Polmueller then notes that Plaintiff later amended his complaint in the

Maxwell case to include, *inter alia,* claims that Dr. Khan revealed his mental health history to

other inmates and C.O.'s and that they made fun of him, prompting him to attempt suicide, and

that Dr. Newton and Defendant Kalsky revealed his mental health history to other inmates and

C.O.'s.  (Document # 28 at p. 9, citing Amended Complaint attached as Exhibit B thereto, at ¶¶

15, 17, 30, and 32).

Ultimately, the Middle District Court granted summary judgment in favor of the

defendants in the Maxwell case, determining, *inter alia*, that the absence of private mental health

assessments by psychiatric and psychological staff did not constitute an Eighth Amendment

violation. (See Exhibits D and E attached to Document # 28).

For a party to be estopped from relitigating an issue, the following elements must be

present[3]:  (1) the issue sought to be precluded must be the same as the one involved in the prior

action; (2) the issue must have been actually litigated; (3) the issue must have been determined

by a valid and final judgment; and (4) the determination must have been essential to the prior

judgment.  Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 214 (3d Cir. 1997).  "Use of

the adjective 'collateral' to characterize this form of estoppel grows out of the fact that the bar of

the prior adjudication is not interposed directly, by parties to the prior suit, but indirectly, by new

defendants, strangers to the earlier action.  Gambocz v. Yelencsics, 468 F.2d 837, 841 (3d Cir.

1972).

---

[3]

Because the final judgment upon which Defendant Polmueller's claim of collateral estoppel is based was issued by a
federal court, the Third Circuit's formulation for federal collateral estoppel applies.

Based on the foregoing, Defendant Polmueller contends that the issue of whether he
"wrongfully revealed Plaintiff's confidential mental health history to others by speaking about it
at his cell door" has already been raised and actually litigated to final judgment in the Maxwell
case and, thus, the same issue is barred from being re-litigated here.  On this issue, alone, the
Court agrees with Defendant Polmueller, and Plaintiff's Eighth Amendment claim regarding
Defendant Polmueller's alleged failure to keep Plaintiff's psychiatric assessments confidential
should be dismissed under the doctrine of collateral estoppel.

Nonetheless, the Court does not agree that Plaintiff is barred from litigating the remainder
of his Eighth Amendment deliberate indifference claims against Defendant Polmueller, as none
of them was raised or litigated to final judgment in the Maxwell case.  These include Plaintiff's
claims that: (i) a psychiatrist (presumably Defendant Polmueller) only saw him when he was
either on medication or after he attempted suicide, and the assessments lasted only five minutes;
and (ii) Defendant Polmueller failed to have Plaintiff removed from the SMU despite his alleged
knowledge that the conditions in the SMU exacerbated Plaintiff's mental illness.  These claims
are not separately addressed by Defendant Polmueller in his pending motion to dismiss and, thus,
should be allowed to proceed on their merits beyond the pleading stage.

### 3.      Pennsylvania's Mental Health Procedures Act

Plaintiff generally claims that his placement and continued confinement in the SMU by
Defendants violated his rights under Pennsylvania's Mental Health Procedures Act ("MHPA"),
50 Pa.C.S. § 7101, *et seq.*, which requires a certain level of adequate treatment for mental health
patients.  Defendant Polmueller has moved to dismiss this claim based on the immunity

22

provisions contained in Section 7114 of the Act, which are set forth, in pertinent part, as follows:[4]

> (a)   **In the absence of willful misconduct or gross negligence**, ... a director of a facility, a physician, ... or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged,... or that the restraint upon such person be otherwise reduced,... shall not be civilly or criminally liable for such decision or for any of its consequences.

50 Pa.C.S. § 7114(a) (emphasis added).

Defendant Polmueller argues that Plaintiff's claims "amount to nothing more than simple negligence," and that "there is no fact alleged from which one could reasonably draw an inference of intentional or grossly negligent conduct."  As a result, Defendant Polmueller contends that he is immune from liability under the MHPA.  Contrary to Defendant Polmueller's assertions, however, this Court finds that one could, in fact, reasonably draw an inference of willful misconduct or grossly negligent conduct from Plaintiff's allegations that Defendant Polmueller allowed him to be kept confined in the SMU, despite having knowledge of Plaintiff's mental illnesses and his numerous attempts at committing suicide.  Nonetheless, this Court is unwilling to engage in such a fact-intensive inquiry at this early stage of the proceeding.  Thus, Defendant Polmueller's motion to dismiss Plaintiff's MHPA claim based upon the Act's immunity provision should be denied at this time.

---

[4]

The Court notes that the DOC Defendants have not moved to dismiss Plaintiff's MPHA claim.

## 4.      Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") allows the Court to dismiss certain claims

*sua sponte*, under the following conditions:

> (b) Grounds for dismissal– On review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the
> complaint– (1) is frivolous, malicious, or fails to state a claim upon which
> relief may be granted;  or (2) seeks monetary relief from a defendant who
> is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss

a complaint which fails to state a claim, but it is required to do so.  Nieves v. Dragovich, 1997

WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act

codified at  28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e(c), the district courts are

required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate

that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory  provisions with respect to actions brought by

prisoners who are proceeding in forma pauperis.  See 28 U.S.C. §1915(e)(2)[5].  Under this

provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to

state a claim, but it is required to do so by mandatory language.  See, e.g., Keener v.

Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28

U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma

pauperis actions that are frivolous or fail to state a claim.").  In performing a court's mandated

---

[5]

Title 28 U.S.C. §1915(e)(2) provides:  "Notwithstanding any filing fee, or any portion thereof, that may have been
paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is
frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief."

function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to

determine if it fails to state a claim upon which relief can be granted, a federal district court

applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure

12(b)(6).  See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under  28

U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims

made by inmates that 'fail to state a claim upon which relief could be granted'").

      Here, Plaintiff alleges that his placement and continued confinement in the SMU, as well

as the allegedly inadequate mental health treatment he received in the SMU, violated his rights

under Title II of the ADA and Section 504 of the Rehabilitation Act.

      Title II of the ADA provides, in relevant part, that "no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services or activities of a public entity or be subjected to discrimination by such

entity." 42 U.S.C. § 12132.  The term "public entity," as defined by Title II of the ADA, does

not include individuals.  42 U.S.C. § 12131(1).  Thus, the law is clear that individuals sued in

their official capacities, such as Defendants in this case, are not "public entities" under the ADA

and are not subject to liability thereunder.  Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir.

2002)(individuals are not subject to liability under Titles I or II of the ADA).[6]  Accordingly,

Plaintiff's ADA claims against the Defendants are barred as a matter of law and must be

---

[6]

The Court notes that an exception to this general rule has been recognized by the Third Circuit to the extent a
plaintiff seeks prospective injunctive relief against state officials acting in their official capacities.  Koslow v.
Commonwealth of Pa., 302 F.3d 161, 178 (3d Cir. 2002).  In this case, however, Plaintiff does not seek injunctive
relief, but merely requests monetary damages.

dismissed.

Similarly, "[c]ourts within this circuit have held that individuals cannot be held liable under the Rehabilitation Act."  Taylor v. Altoona Area School District, 513 F.Supp.2d 540, 556 (W.D.Pa. 2007), citing, inter alia, A.W. v. The Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007)("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  As a result, Plaintiff's Rehabilitation Act claims against Defendants must also be dismissed.


## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1.    the DOC Defendants' motion to dismiss [Document # 5] be granted in part, as follows:

   a.    All claims against SCI-Albion Defendants should be dismissed as untimely, and Defendants Brooks, Wilkes, Bryant, Giddens, Aubel, McKissock, and Suesser should be dismissed from this case;

   b.    Any claim related to or arising from the discontinuation of Plaintiff's psychotropic medications in April and October 2006 should be dismissed as untimely; and

   c.    Any claim against Defendant Maue related to or arising from his alleged failure to provide a psychiatric evaluation and medication during Plaintiff's hunger strike from January 2007 to March 2007 should be dismissed as untimely.

The remainder of the DOC Defendants' motion to dismiss should be denied.

2.    Defendant Polmueller's motion to dismiss or in the alternative for summary judgment [Document # 27] be granted in part, as

follows:

    a.    Any claim against Defendant Polmueller related to or arising from his alleged failure to provide a psychiatric evaluation and medication during Plaintiff's hunger strike from January 2007 to March 2007 should be dismissed as untimely;

    b.    Plaintiff's Eighth Amendment claim related to Defendant Polmueller's alleged failure to keep his psychiatric assessments confidential should be denied under the doctrine of collateral estoppel;

The remainder of Defendant Polmueller's motion should be denied

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants pursuant to the Americans with Disabilities Act and the Rehabilitation Act be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 12, 2010

cc:    The Honorable Sean J. McLaughlin
      United States District Judge