**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAVANNA SPENCER, | ) | |
| Plaintiff | ) | C.A. No. 09-124 Erie |
| | ) | |
| v | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| LANCE COURTIER, et al., | ) | |
| Defendants | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


### I.     RECOMMENDATION

It is respectfully recommended that:

1.     the DOC Defendants' motion for summary judgment [ECF No. 52] be granted; and

2.     Defendant Polmueller's motion for summary judgment [ECF No. 57] be granted.


It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants pursuant to the Americans with Disabilities Act and the Rehabilitation Act be dismissed.


### II.     REPORT

#### A.     Relevant Procedural History

On June 10, 2009, Plaintiff Ravanna Spencer, an inmate incarcerated at the State Correctional Institution at Retreat in Hunlock Creek, Pennsylvania ("SCI-Retreat"), filed this civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants are:  Lance Courtier ("Courtier"), former Chief Psychologist at the Pennsylvania Department of Corrections ("DOC"); Jeffery Beard, Secretary of the DOC ("Beard"); Donald Kelchner, former Superintendent at SCI-

Camp Hill ("Kelchner"); David Patton, former Deputy Superintendent at SCI-Camp Hill ("Patton"); Teresa Law, Medical Grievance Coordinator at SCI-Camp Hill ("Law"); Richard Southers, Unit Manager at SCI-Camp Hill ("Southers"); Edward Kalsky, SMU Psychologist at SCI-Camp Hill ("Kalsky"); Marilyn S. Brooks, former Superintendent at SCI-Albion ("Brooks"); Joyce Wilkes, staff member at SCI-Albion ("Wilkes"); Ronald Bryant, former Assistant Superintendent at SCI-Albion ("Bryant"); Major Giddens, corrections officer at SCI-Albion ("Giddens"); Major Aubel, corrections officer at SCI-Albion ("Aubel"); Patty McKissock, Unit Manager at SCI-Albion ("McKissock"); Fred Maue, former Chief Psychologist at the DOC ("Maue"); William Stickman, Deputy Secretary at the DOC ("Stickman"); John Shaffer, former Executive Deputy Secretary at the DOC ("Shaffer"); Eugene Polmueller, M.D. (inaccurately identified as Eugene "Pullmuller" in the Complaint), Chief Psychologist at SCI Camp Hill ("Polmueller"); Kurt Suesser, corrections officer at SCI-Albion ("Suesser"); and Scott Whaling, SMU Counselor at SCI-Camp Hill ("Whaling"). All Defendants other than Defendant Polmueller are hereafter collectively referred to as "DOC Defendants".

Plaintiff alleges that Defendants violated his rights under the eighth and fourteenth amendments to the United States Constitution, as well as his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and Pennsylvania's Mental Health Procedures Act. Primarily, Plaintiff claims that the conditions of his confinement in the Special Management Unit ("SMU") at SCI-Camp Hill from January 11, 2006 to June 8, 2007, violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. In particular, Plaintiff claims that his mental health problems

were exacerbated by the conditions to which he was exposed. As relief for his claims, Plaintiff seeks compensatory and punitive damages.

Both the DOC Defendants and Defendant Polmueller filed motions to dismiss Plaintiff's complaint. [ECF Nos. 5 and 27, respectively]. On February 15, 2010, this Court issued a Report and Recommendation ("R&R"), recommending that each motion be granted in part and denied in part. [ECF No. 32]. On March 18, 2010, District Judge Sean J. McLaughlin issued a Memorandum Order adopting, in part, this Court's R&R, and granting Defendants' motions to dismiss the following claims: (1) Plaintiff's claims related to or arising from the DOC Defendants' discontinuation of his psychotropic medications in April and October 2006; and (2) Plaintiff's claims against both Defendant Maue and Defendant Polmueller related to or arising from their alleged failure to provide a psychiatric evaluation and medication during Plaintiff's hunger strike from January 2007 to March 2007. Defendants' motions were denied in all other respects. [ECF No. 34].

As a result of Judge McLaughlin's Order, the following claims remain:

1. Plaintiff's Eighth Amendment deliberate indifference claim against the DOC Defendants arising from the conditions of confinement in the SMU's at SCI-Albion and SCI-Camp Hill;

2. Plaintiff's Fourteenth Amendment due process claim against the DOC Defendants arising from his placement in the SMU at SCI-Camp Hill;

3. Plaintiff's Eighth Amendment deliberate indifference claims against Defendant Polmueller, alleging that

(i) Defendant Polmueller only saw him when he was either on medication or after he attempted suicide, and the assessments lasted only five minutes;

(ii) Defendant Polmueller failed to have Plaintiff removed from the SMU despite his alleged knowledge that the conditions in the SMU exacerbated Plaintiff's mental illness; and

(iii) Defendant Polmueller failed to keep Plaintiff's psychiatric assessments confidential;

4.     Plaintiff's claim against Defendant Polmueller under Pennsylvania's Mental Health and Procedures Act; and

4.     Plaintiff's claims against all Defendants under the ADA and the Rehabilitation Act.

Both the DOC Defendants and Defendant Polmueller filed answers to Plaintiff's complaint [ECF Nos. 35 and 38, respectively], and the parties have since completed discovery.

On November 15, 2010, the DOC Defendants filed a motion for summary judgment [ECF No. 52], arguing, *inter alia*, that: (i) Plaintiff's lawsuit is barred by the doctrine of *res judicata*; (ii) they are not liable because they were not personally involved in the challenged actions; (iii) they have no constitutional liability for Plaintiff's conditions of confinement; (iv) Plaintiff fails to state a Fourteenth Amendment due process claim because no due process rights flow from DOC policies; (v) there is no evidence of a conspiracy to violate Plaintiff's rights; and (vi) Defendants are entitled to qualified immunity.[1]

On November 30, 2010, Defendant Polmueller also filed a motion for summary judgment

_____

[1]

The DOC Defendants also seek to dismiss Plaintiff's constitutional claims to the extent they are being sued in their official capacities for monetary damages; however, Plaintiff clearly states in his complaint that his constitutional claims are asserted against Defendants in their individual capacities, only. (ECF No. 3, Complaint, at ¶ 4).

[ECF No. 57], arguing that: (i) Plaintiff's claims against him are barred by the applicable statute of limitations; (ii) Plaintiff's claims are barred by the doctrines of collateral estoppel and *res judicata*; (iii) Plaintiff's claims are barred by judicial estoppel; and (iv) Plaintiff cannot support his claims of deliberate indifference.

Plaintiff has filed a brief in opposition to the DOC Defendants' motion [ECF No. 74], but has failed to file a substantive response to Defendant Polmueller's motion. Since more than sufficient time has passed for Plaintiff to file an appropriate response to Defendant Polmueller's motion, this matter is now ripe for consideration.

### B.    Relevant Factual History

Plaintiff was incarcerated at SCI-Albion from July 15, 2003 to January 11, 2006. (ECF No. 53, Defendants' Concise Statement of Material Facts, at ¶¶ 6-7). During his 2½ year stay at SCI-Albion, Plaintiff received 58 misconduct charges. (Id. at ¶ 14). On January 11, 2006, Plaintiff was transferred to SCI-Camp Hill, where he was immediately placed in the SMU. (Id. at ¶¶ 8-9). Inmates remain in the SMU program until they exhibit behavior indicating that they can be returned to the general prison population with a reduced risk of the recurrence of the aggressive behavior which caused their initial assignment to the SMU. (Id. at ¶ 52). While at SCI-Camp Hill, Plaintiff received 40 misconduct charges in 1½ years. (Id. at ¶ 15). Plaintiff remained in SCI-Camp Hill's SMU until he was transferred to SCI-Fayette on June 8, 2007. (Id. at ¶ 10).

While in the SMU, Plaintiff alleges that he was subjected to the following conditions:

1. 24-hour lighting and dust blowing from vents, which allegedly caused him to suffer sleep deprivation, headaches, and worsening of his mental illness (Complaint at ¶ 19);

2. He was allowed only five hours of exercise a week "in a small cage," with no exercise equipment, before which he was strip-searched, and after which other inmates often threw urine and feces at him, or spat on him (Id. at ¶ 20);

3. Deodorant, lotion, hair grease, conditioner, and mouthwash were not allowed, reading materials were banned, and he was prohibited from taking correspondence courses and participating in rehabilitation or educational programs, which caused him to be ineligible for parole. (Id. at ¶¶ 21-23);

4. The law library was inadequate because it did not contain required books and legal materials (Id. at ¶ 24);

5. Toilets often backed up and overflowed, cleaning supplies were refused, and he was forced to clean his cell with the same rag and soap with which he washed his body (Id. at ¶ 26);

6. He was exposed to unsanitary food conditions and environmental tobacco smoke (Id. at ¶¶ 27-28);

7. He was unnecessarily strip-searched before and after non-contact visits, during which he remained in chains and handcuffs (Id. at ¶ 29);

8. Guards constantly yelled and banged on cell doors, and allegedly caused inmates to bang food trays and throw feces, urine or spit on undesirable inmates to keep them awake. (Id. at ¶ 30); and

9. Fire safety measures were inadequate (Id. at ¶¶ 32-33).

Plaintiff claims that, due to the "harsh stringencies of the SMU," he attempted to commit suicide on April 6, 7, and 16, 2006, and also made a further attempt at suicide in or around October 2006. (Id. at ¶¶ 40-42, 48). Plaintiff alleges further that he was only seen by a

psychiatrist or psychologist when he was on medication, and the meetings "were never longer than 5 minutes" and were not confidential. (<u>Id</u>. at ¶¶ 37-39).

On May 22, 2006, Defendants Kelchner and Beard made a personal visit to the SMU, at which time Plaintiff told them about his mental health problems and the harsh conditions that exacerbated his health. (<u>Id</u>. at ¶ 44). According to Plaintiff, Defendant Beard said "he would look into it but never did." (<u>Id</u>.).

### C.    Standards of Review

#### 1.    Summary Judgment

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); <u>Andreoli v. Gates</u>, 482 F.3d

641, 647 (3d Cir. 2007); <u>UPMC Health System v. Metropolitan Life Ins. Co.</u>, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  <u>Celotex</u>, 477 U.S. at 322.  <u>See also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." <u>Garcia v. Kimmell</u>, 2010 WL 2089639, at * 1 (3d Cir. 2010) <u>quoting</u> <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  <u>See also</u> <u>El v. SEPTA</u>, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  <u>Anderson</u>, 477 U.S. at 248.  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Id.</u> at 247-249.

**2.**     ***Pro Se* Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997).  <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**D.** **Discussion**

    **1.** **Statute of Limitations**

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(internal citations omitted). In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 claim must be filed no later than two years from the date the cause of action accrued. See Lake v. Arnold, 232 F.2d 360, 368 (3d Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996). Furthermore, a claim under § 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based." Sameric, 142 F.3d at 599.

Here, Plaintiff's original Complaint was filed on June 1, 2009; however, it was apparently signed by Plaintiff on May 24, 2009. Thus, for purposes of applying the statute of limitations, this Court will treat May 24, 2009, as the relevant filing date pursuant to the prison mailbox rule. See Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa.Super. 2001), citing Commonwealth v. Little, 716 A.2d 1287 (Pa.Super. 1998)(in determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]"). Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to May 24, 2007, is barred by the statute of

limitations.

Defendant Polmueller contends that Plaintiff's claims against him are barred by the statute of limitations because his treatment of Plaintiff involved only two visits in February of 2007, both of which were limited to an assessment of Plaintiff's mental state during a hunger strike he staged at SCI-Camp Hill.[2] (See ECF No. 69, Defendant Polmueller's Affidavit, at ¶¶ 2, 3, 5).  This contention is supported by the voluminous medical records submitted as exhibits to Defendant Polmueller's affidavit. (See ECF No. 70).  Since it is now apparent that the only contact Defendant Polmueller had with Plaintiff occurred, on an extremely limited basis, over two years before this action was commenced, Plaintiff's claims against Defendant Polmueller are time-barred.  Accordingly, summary judgment should be granted in favor of Defendant Polmueller on all of Plaintiff's claims against him.

## 2. *Res Judicata*

The DOC Defendants contend that the instant case is barred by the doctrine of *res judicata* because Plaintiff allegedly raised the same claims in a prior lawsuit he litigated to conclusion in the United States District Court for the Middle District of Pennsylvania, at Civil Action No. 06-1099 (herein referred to as the "Maxwell case," in reference to the first named

---

[2]

Defendant Polmueller's counsel discloses in his motion for summary judgment that he was not aware of the limited nature of Defendant Polmueller's involvement in Plaintiff's treatment until after the motion to dismiss stage. (See ECF No. 58, Defendant Polmueller's Brief, at p. 6 n. 1).

defendant in that case). (<u>See</u> ECF No. 169).[3]

The doctrine of claim preclusion, traditionally known as *res judicata*, "... generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748 (2001). Claim preclusion bars a plaintiff from asserting a cause of action that could have been raised and decided in a prior suit. <u>CoreStates Bank, N.A. v. Huls America, Inc</u>, 176 F.3d 187, 195 (3d Cir. 1999). Application of the doctrine requires: "'(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action.'" <u>Id</u>. at 194, <u>quoting</u> <u>Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra</u>, 983 F.2d 495, 504 (1992). "In deciding whether two suits are based on the same 'cause of action,' we take a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" <u>Id</u>., <u>quoting</u> <u>United States v. Athlone Indus.</u>, 746 F.2d 977, 984 (3d Cir. 1984).

_____

3

In his opposition brief, Plaintiff argues that the DOC Defendants have waived their right to invoke the doctrine of *res judicata* because they failed to raise the doctrine as an affirmative defense in their answer to the complaint; however, the DOC Defendants could not have raised the affirmative defense of *res judicata* in their answer, because the final order in the Maxwell case was not entered until July 23, 2010, approximately four months after the answer was filed. Moreover, Plaintiff has failed to allege prejudice. Accordingly, the Court will allow the DOC Defendants to invoke the defense of *res judicata* in their motion for summary judgment. <u>See</u> <u>Courteau v. U.S.</u>, 287 Fed. Appx. 159, 162 (3d Cir. 2008)(finding that District Court did not abuse its discretion in permitting defendant to raise the affirmative defense of *res judicata* in its post-answer motion for summary judgment because defendant was not aware of prior judgment at the time it filed its answer, and plaintiff failed to allege prejudice).

The DOC Defendants argue that since a final judgment on the merits was entered in the Maxwell case on July 23, 2010, Plaintiff is precluded from re-litigating the same claims here. (ECF No. 54, DOC Defendants' Brief, at p. 6). A thorough review of the claims and allegations raised in each case, however, reveals little commonality between the Maxwell case and the case at hand. In fact, the vast majority of Plaintiff's allegations against the DOC Defendants in this case are substantially different from such allegations in the Maxwell case.[4] Here, Plaintiff's primary cause of action against the DOC Defendants is an Eighth Amendment deliberate indifference claim arising from the conditions of confinement in SCI-Camp Hill's SMU, a claim that was not raised in the Maxwell case, nor could it have been, since Plaintiff did not exhaust his administrative remedies with regard to such claim until June 22, 2007. (See ECF No. 3, Complaint, at ¶ 56). Thus, Plaintiff's Eighth Amendment deliberate indifference claim against the DOC Defendants, arising from the conditions of Plaintiff's confinement in the SMU, is clearly not barred by the doctrine of *res judicata*.

Nonetheless, Plaintiff's Fourteenth Amendment due process claim arising from his placement in the SMU at SCI-Camp Hill on June 11, 2006, is substantially similar, if not identical, to Plaintiff's due process claim that arose from the same set of facts in the Maxwell

---

[4]

Plaintiff's constitutional claims against the DOC defendants in the Maxwell case consisted primarily of: (i) Fourteenth Amendment due process and equal protection claims against common Defendants Beard, Kelchner, and Law, arising from their alleged failure to take corrective action to stop abuses allegedly committed by the other defendants; (ii) a retaliation claim against the same Defendants arising from the decision to take Plaintiff off of his medication; (iii) an Eighth Amendment claim that the same Defendants were deliberately indifferent to his serious medical needs; (iv) a conspiracy claim against Defendant Law; (v) a Fourteenth Amendment due process claim arising from his placement in the SMU at SCI-Camp Hill on January 11, 2006; and (vi) a Fourteenth Amendment equal protection claim arising from the alleged discriminatory treatment of him due to his mental health issues.

case.  Specifically, in the Maxwell case, Plaintiff made the following allegation:

> 13.      On January 11, 2006, I was brought from another prison to SCI-Camp Hill (SMU).  I was suposed [sic] to come here and Defendants Jeffery A. Beard, Donald Kelchner, Counselor Whaling, Richard Southers, Andrew Newton, Muhammad Khan, and Edward Kalsky were all aware of because the transfer has to go through a process and be accepted by these Defendants they were aware that I was suposed [sic] to go to a (SNU) special need unit instead of the SMU which my first transfer was denied because my mental health issues yet they accepted me and on January 13, 2006, I mistakenly signed a (SNU) special needs unit treatment plan when this is not a (SNU) but rather a (SMU) special management unit which is a control unit and is not suitable for a mentally disabled person such as myself....

(Civil Action No. 3:06-cv-1099, ECF No. 18, Amended Complaint, at ¶ 13).  This allegation was construed in the Maxwell case as a due process claim, which was dismissed by the Middle District Court by Order dated January 9, 2007. (Civil Action No. 3:06-cv-1099, ECF No. 32).

Here, a substantially similar allegation has been made:

> 10.      ... Defendants Suesser, Wilkes, McKissock, Bryant, Giddens, Brooks, Aubel, Shaffer, Stickman, Courtier, Kelchner, Patton, Southers, Kalsky and Whaling all agreed to place Plaintiff in the (SMU) special management unit a highly restricted unit despite the fact that there [sic] 6.5.1 procedures manual generally excludes seriously mental ill prisoner axis I from being placed in the SMU which was known by [them].  In addition my mental problem[s] were the reason that they denied the first petition.... The Defendants also aware that I was diagnosed with an axis I illness and that I was on psychotropic medications ... that treated axis I illness yet the Plaintiff was still placed in the SMU....

(ECF No. 3, Complaint, at ¶ 10).  Since this allegation gives rise to the same due process claim that was raised and ultimately dismissed by the Middle District Court in the Maxwell case,

Plaintiff is barred by the doctrine of *res judicata* from re-litigating it here.[5]  Accordingly,

summary judgment should be granted in favor of the DOC Defendants on Plaintiff's Fourteenth

Amendment due process claim arising from his placement in SCI-Camp Hill's SMU on January

11, 2006.

### 3.    Eighth Amendment Conditions of Confinement Claim

The only constitutional claim left to be considered on its merits is Plaintiff's Eighth

Amendment claim against the DOC Defendants arising from the conditions of Plaintiff's

confinement in SCI-Camp Hill's SMU.  In particular, Plaintiff alleges that the DOC Defendants

violated his Eighth Amendment right to be free from cruel and unusual punishment by subjecting

him to undesirable, unsafe and/or unsanitary conditions in the SMU, which he claims

exacerbated his alleged mental health condition.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must

show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted

the injury with deliberate indifference."  Farmer v. Brennan, 511 U.S. 825, 834 (1994)  An

---

[5]

The Court notes that, although some of the Defendants in this case differ from those in the Maxwell case, "where ... res judicata is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have ... enlarged the area of res judicata beyond any definable categories of privity between the defendants."  Bruszewski v United States, 181 F.2d 419, 422 (3d Cir. 1950).  "The defendant invoking claim preclusion must demonstrate only that a 'close or significant relationship' exists with the previous defendant.'"  Creely v. Genesis Health Ventures, Inc., 184 Fed.Appx. 197, 201 (3d Cir. 2006), quoting Gambocz v. Yelencsics, 468 F.2d 837, 841 (3d Cir. 1972).  Here, the DOC Defendants correctly note that "Plaintiff has merely substituted one group of DOC employees for another group," many of whom are identical. (ECF No. 54, DOC Defendants' Brief, at p. 6). In addition, Plaintiff essentially alleges that the DOC Defendants from the Maxwell case worked in conjunction with the additional DOC Defendants in this case to have him placed in SCI-Camp Hill's SMU.  Thus, a "close or significant relationship" exists among the Defendants named in both cases to warrant the application of claim preclusion.

objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, clothing, shelter, and medical care. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

Here, at the motion to dismiss stage, this Court found that Plaintiff had "provide[d] enough information from which a fact finder may conclude that Defendants were deliberately indifferent to the substantial risk of serious harm Plaintiff's continued confinement in the SMU could cause to his mental health." (ECF No. 32, Report and Recommendation, at p. 19). This finding was based upon Plaintiff's allegations that he suffers from various mental illnesses that placed him at greater risk of suffering injury than other inmates in the SMU. In particular, Plaintiff has alleged that he suffers from depression, NOS, borderline personality disorder, anti-social personality disorder, and episode adjustment disorder, and is being treated for schizophrenic disorder. (ECF No. 3, Complaint, at ¶ 17). Plaintiff alleges further that he attempted suicide on at least five occasions as a result of the harsh conditions in the SMU, which he claims exacerbated his mental health problems. (Id. at ¶¶ 39-42, 48). Accepting Plaintiff's

allegations as true for purposes of determining the DOC Defendants' prior motion to dismiss, this Court found that Plaintiff sufficiently alleged "that the harsh conditions in the SMU deprived him of the minimal civilized measure of one of life's necessities - his mental health," and that "the DOC Defendants were deliberately indifferent to the serious risk of harm his continued confinement in the SMU imposed upon his mental health." (ECF No. 32, Report and Recommendation, at pp. 19).

Since such time, however, the record has been expanded to include, *inter alia*, copies of all of Plaintiff's mental health records. These records overwhelmingly demonstrate that Plaintiff was never diagnosed as having an active, serious mental illness that would have precluded his placement or continued confinement in the SMU. Instead, Plaintiff has been consistently diagnosed with Anti-Social Personality Disorder ("ASPD"), which is "an axis II diagnosis" that is behavioral in nature and is defined as "a pervasive pattern of disregard for and violation of the rights of others since age 15 years...." (ECF No. 28-3, Unsworn Declaration of Defendant Kalsky, at ¶ 8). Moreover, the mental health records clearly indicate that his attending psychiatrists considered Plaintiff's suicide attempts as manipulative "gestures" directed toward avoiding the SMU. In particular, the Court finds the following observations enlightening:

1.  On November 5, 2005, attending psychiatrist Dr. Longstreet noted that Plaintiff's "[u]se of Elavil contraindicated secondary to history of hoarding same med – in addition, this inmate does not suffer from a mental illness. Behaviors/poor choices + conduct due to a severe personality disorder." (ECF No. 58-7 at p. 42).

2.  On April 5, 2006, after Plaintiff apparently attempted suicide by tying a sheet around his neck and hanging on his cell door, attending psychiatrist Dr. Andrew Newton noted that "no abrasions, ligature marks [were] observed around the neck," and

Plaintiff exhibited "no clinical signs of psychotic illness." Dr. Newton noted a diagnosis of ASPD with a "suicide gesture." (ECF No. 58-1 at p. 12).

3.      In April 14, 2006, Dr. Mohammad Khan put Plaintiff in an observation cell because he had opened a wound on his forearm that had been sutured by the medical department. Dr. Khan noted that he saw no signs or symptoms of depression or psychosis, and opined that Plaintiff was exhibiting "manipulative behavior to get out of E block." He also noted that Plaintiff did not need psychiatric medications. (Id. at pp. 18-20).

4.      On April 18, 2006, Dr. Newton noted that Plaintiff "does not have the axis I pathology that necessitates psychotropic medication. His behavior is aimed at getting out of the SMU... He is yelling, screaming, manipulative." The next day, Dr. Newton noted that Plaintiff was smearing feces around his cell and was "intermittently threatening to kill himself." He observed that Plaintiff was "rather obstinate with manipulative suicidal gestures." (Id. at p. 27-28).

5.      On April 21, 2006, Dr. Newton noted that "all [Plaintiff's] manipulative behaviors are directed at avoiding the SMU," and he still found no clinical evidence to corroborate any of Plaintiff's claims of mental illness. Dr. Newton noted further that Plaintiff's vague suicidal ideations were dependent on him not going to the SMU. (Id. at p. 30).

6.      On April 22, 2006, Dr. Khan saw Plaintiff, told him that he had no indications for psychiatric medications, and assessed him with "antisocial personality, not psychotic, not depressed, poses potential to hurt himself and others due to behavioral acting out." (Id. at p. 31).

7.      On May 4, 2006, Dr. Newton noted that Plaintiff was smearing feces around his sink and all around his cell, and that Plaintiff said he would destroy the cell and file a lawsuit that he was being abused. Dr. Newton observed that Plaintiff was angry, manipulative, and making vague suicidal threats of a manipulative nature. (Id. at p. 33).

8.      On October 30, 2006, Dr. Ralph Tomei noted that Plaintiff's

suicidal ideation appeared to be manipulative in character, and assessed Plaintiff with ASPD. (Id. at p. 39). During his follow-up visit on November 7, 2006, Dr. Tomei noted that Plaintiff continued to present himself as needing medications "in order to manipulate staff." (Id. at p. 40).

9.      On February 12, 2007, during Plaintiff's hunger strike, Plaintiff was seen by Defendant Polmueller, who noted that, despite Plaintiff's statements that he suffered from manic depression and schizophrenia, he found nothing indicating delusion, paranoia, or other symptom of bipolar or formal thought disorder. Instead, he assessed Plaintiff with ASPD, no serious mental illness, hunger strike. (Id. at p. 41).

10.     During his follow-up visit with Plaintiff on February 19, 2007, Defendant Polmueller found no objective symptom of any serious mental illness. (Id. at p. 42).

The Court finds no contrary medical evidence of record to support Plaintiff's claim that he suffered from a serious mental illness at any time before or during his placement and confinement in SCI-Camp Hill's SMU. As a result, the lesser standards courts have applied to conditions of confinement claims brought by mentally-ill inmates are not applicable here.[6] Accordingly, this Court will apply the same standards that were applied by the Honorable Lisa Pupo Lenihan in the analogous case of Brown v. Beard, 2:07-cv-637, slip op. (W.D.Pa. Mar. 9, 2009).

_____

[6]

See, e.g., Madrid v. Gomez, 889 F.Supp. 1146, 1265 (N.D.Cal. 1995)("[for] those who the record demonstrates are at a particularly high risk for suffering very serious or severe injury to their mental health, including overt paranoia, psychotic breaks with reality, or massive exacerbations of existing mental illness as a result of the conditions in the SHU... [t]he risk is high enough, and the consequences serious enough, that we have no hesitancy in finding that the risk is plainly 'unreasonable.'"); Jones'El v. Berge, 164 F.Supp.2d 1096, 1121 (W.D.Wis. 2001)(holding that plaintiffs had shown "more than a negligible chance of success of demonstrating that the conditions of confinement at Supermax pose significant risks to seriously mentally ill inmates."); Ruiz v. Johnson, 37 F.Supp.2d 855, 914 (S.D.Tex. 1999)(upholding mentally ill inmates' challenge to conditions of deprivation in administrative segregation

19

In Brown, Magistrate Judge Lenihan observed that "[n]either classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual." Id. at *16, citing Hutto v. Finney, 437 U.S. 678, 686 (1978); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981)("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment").  Judge Lenihan remarked further that institutions housing "persons convicted of serious crimes cannot be free of discomfort." Brown, slip op. at * 17 (citations omitted).  In this regard, Judge Lenihan upheld the conditions in the SMU and LTSU in the face of an Eighth Amendment challenge, citing with approval the Pennsylvania Superior Court's decision in Rivera v. Pennsylvania Department of Corrections, 827 A.2d 525 (Pa.Super. 2003), which rejected an Eighth Amendment challenge to conditions of confinement in the LTSU based upon allegations substantially similar to Plaintiff's challenge in this case.  In particular, the Rivera court observed and upheld the following conditions that existed in the LTSU:

> The LTSU ... is potentially a stay of indefinite duration for the inmate.
>
> The basic conditions in this most restrictive of units designed for the most severe behavioral problems are, perhaps not surprisingly, very unpleasant.
>
> The inmates are not allowed most types of personal property, newspapers, leisure books, radio, television, visits, or participation in educational or religious programs.  They are confined in a solitary cell for twenty-four hours a day.  Three showers a week are allowed and one hour of exercise a day, five days a week.  There are limited library privileges and it is not open on the weekends.

unit).

There is a regular problem of feces throwing and the accompanying stench, which has been recently only partially corrected by a modification of the cell doors. Another practice of stopping up toilets until they run over and flood the cells, is not uncommon and can lead to similar unsanitary conditions. Although the institution has a specialized team to go in and clean and sanitize after such incidents, the evidence suggests that there are sometimes period of delay during which the inmates are residing and even eating their meals within the sight and smell of human waste...

.... There is considerable noise described as banging and screaming in the unit at all hours of the day and night and the lights are left on twenty-four hours a day. Many of the inmates are described as suffering from mental or emotional illnesses, although the severely mentally ill are apparently housed in a separate unit.

There have been problems with the heat during which the cells have been quite cold during the winter months, although extra blankets appear to have been available at those times.... At times, pepper spray is used to control unruly inmates, and the spray lingers in the air, causing problems for the surrounding inmates.

This Court would expect the conditions on such a unit to be even less pleasant than the rest of the prison, and that few privileges, comforts or amenities will be available, as the LTSU is disciplinary custody and is intended to be punitive.

Rivera, 837 A.2d at 529-32.

Here, Plaintiff is complaining about conditions substantially similar to those found to be consistent with the Eighth Amendment in Brown and Rivera. As a result, the DOC Defendants should be granted summary judgment with regard to Plaintiff's Eighth Amendment conditions of confinement claim.

## 4.    Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") allows the Court to dismiss certain claims

*sua sponte*, under the following conditions:

> (b) Grounds for dismissal– On review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the
> complaint– (1) is frivolous, malicious, or fails to state a claim upon which
> relief may be granted;  or  (2) seeks monetary relief from a defendant who
> is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss

a complaint which fails to state a claim, but it is required to do so.  <u>Nieves v. Dragovich</u>, 1997

WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act

codified at  28 U.S.C. §§ 1915A, 1915(e) and  42 U.S.C. § 1997e©, the district courts are

required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate

that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by

prisoners who are proceeding in forma pauperis.  <u>See</u> 28 U.S.C. §1915(e)(2)[7].  Under this

provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to

state a claim, but it is required to do so by mandatory language.  <u>See</u>, <u>e.g.</u>, <u>Keener v.

Pennsylvania Bd. of Probation and Parole</u>, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28

---

[7]

Title 28 U.S.C. §1915(e)(2) provides:  "Notwithstanding any filing fee, or any portion thereof, that may have been
paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is
frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief."

U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim.").  In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  <u>See</u>, <u>e.g.</u>, <u>Tucker v. Angelone</u>, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under  28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e© the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

Here, Plaintiff alleges that his placement and continued confinement in the SMU, as well as the allegedly inadequate mental health treatment he received in the SMU, violated his rights under Title II of the ADA and Section 504 of the Rehabilitation Act.

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132.  The term "public entity," as defined by Title II of the ADA, does not include individuals.  42 U.S.C. § 12131(1).  Thus, the law is clear that individuals sued in their official capacities, such as Defendants in this case, are not "public entities" under the ADA and are not subject to liability thereunder.  <u>Emerson v. Thiel College</u>, 296 F.3d 184, 189 (3d Cir. 2002)(individuals are not subject to liability under Titles I or II of the ADA).[8]  Accordingly,

---

[8]

The Court notes that an exception to this general rule has been recognized by the Third Circuit to the extent a

Plaintiff's ADA claims against the Defendants are barred as a matter of law and must be dismissed.

Similarly, "[c]ourts within this circuit have held that individuals cannot be held liable under the Rehabilitation Act." Taylor v. Altoona Area School District, 513 F.Supp.2d 540, 556 (W.D.Pa. 2007), citing, inter alia, A.W. v. The Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007)("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  As a result, Plaintiff's Rehabilitation Act claims against Defendants must also be dismissed.


**III.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that:

     1.      the DOC Defendants' motion for summary judgment [ECF No. 52] be granted; and

     2.      Defendant Polmueller's motion for summary judgment [ECF No. 57] be granted.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants pursuant to the Americans with Disabilities Act and the Rehabilitation Act be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written

---

plaintiff seeks prospective injunctive relief against state officials acting in their official capacities.  Koslow v. Commonwealth of Pa., 302 F.3d 161, 178 (3d Cir. 2002).  In this case, however, Plaintiff does not seek injunctive relief, but merely requests monetary damages.

objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: May <u>23</u>, 2011

cc:     The Honorable Sean J. McLaughlin
        United States District Judge